

## Fourth Court of Appeals
### San Antonio, Texas

**MEMORANDUM OPINION**

No. 04-22-00490-CV

**IN THE INTEREST OF B.H., JR.**, a Child

From the 198th Judicial District Court, Bandera County, Texas
Trial Court No. CVPC-21-0000219
Honorable Robert J. Falkenberg, Judge Presiding

Opinion by:      Luz Elena D. Chapa, Justice

Sitting:            Luz Elena D. Chapa, Justice
                      Irene Rios, Justice
                      Lori I. Valenzuela, Justice

Delivered and Filed: January 18, 2023

AFFIRMED

This is an accelerated appeal from an order terminating appellant Barry's parental rights to his son, B.H., Jr.[1] Barry argues the evidence is legally and factually insufficient to support the trial court's grounds for termination. We affirm.

### BACKGROUND

The Department of Family and Protective Services filed an original petition on July 16, 2021. In the petition, the Department sought appointment as B.H.'s temporary managing conservator and termination of Barry's parental rights.

---

[1] To protect the identity of the minor child, we refer to appellant by a fictitious name and to the child by his initials. *See* TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8.

On July 8, 2022, the case proceeded to a bench trial, with evidence consisting of ten exhibits and testimony from four witnesses. After hearing the evidence, the trial court found by clear and convincing evidence Barry voluntarily left B.H. alone or in the possession of another without providing adequate support for him, constructively abandoned B.H., and failed to comply with the provisions of the court order specifically establishing the actions necessary for him to secure B.H.'s return. *See* TEX. FAM. CODE §§ 161.001(b)(1)(C), (N) & (O). The trial court also found by clear and convincing evidence terminating Barry's parental rights was in B.H.'s best interest. *See id*. § 161.001(b)(2). Based on its findings, the trial court terminated Barry's parental rights to B.H. and appointed the Department as the child's permanent managing conservator.[2]

Barry timely appealed the trial court's order, challenging legal and factual sufficiency of each of the grounds for termination.

### STANDARD OF REVIEW

A parent-child relationship may be terminated, pursuant to section 161.001 of the Texas Family Code, only if the trial court finds by clear and convincing evidence one of the predicate grounds enumerated in subsection (b)(1) and termination is in a child's best interest. *Id*. § 161.001(b). Clear and convincing evidence requires proof that will produce in the factfinder's mind "a firm belief or conviction as to the truth of the allegations sought to be established." *Id*. § 101.007. To determine if this heightened burden of proof is met, we employ a heightened standard of review by judging whether a "factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). This heightened standard "guards the constitutional interests implicated by termination, while retaining the deference an appellate court must have for the factfinder's role." *In re O.N.H.*, 401

---

[2] B.H.'s mother agreed to sign an affidavit relinquishing her parental rights to B.H., *see* TEX. FAM. CODE § 161.001(b)(1)(K), and does not join Barry in this appeal.

S.W.3d 681, 683 (Tex. App.—San Antonio 2013, no pet.). Under it, the factfinder is the sole judge of the weight and credibility of the evidence, including the testimony of the witnesses. *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009). We do not reweigh witness credibility issues, and we "defer to the [factfinder's] determinations, at least so long as those determinations are not themselves unreasonable.'" *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (quoting *Sw. Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 625 (Tex. 2004)).

"When reviewing the sufficiency of the evidence, we apply the well-established [legal and factual sufficiency] standards." *In re J.M.G.*, 608 S.W.3d 51, 53 (Tex. App.—San Antonio 2020, pet. denied) (alteration in original) (quoting *In re B.T.K.*, No. 04-19-00587-CV, 2020 WL 908022, at *2 (Tex. App.—San Antonio Feb. 26, 2020, no pet.) (mem. op.)). In our legal sufficiency review, we must "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We must assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and we do not disregard undisputed evidence even if it does not support the trial court's finding. *Id.* In our factual sufficiency review, we consider the entire record and determine whether, in light of the entire record, any disputed evidence "is so significant that a factfinder could not reasonably have formed a firm belief or conviction" on the challenged finding. *Id.*

### SUFFICIENCY OF THE EVIDENCE SUPPORTING CONSTRUCTIVE ABANDONMENT

Subsection (N) provides a trial court may terminate the parent-child relationship if it finds by clear and convincing evidence the parent has:

> constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than six months, and:

(i) the department has made reasonable efforts to return the child to the parent;

(ii) the parent has not regularly visited or maintained significant contact with the child; and

(iii) the parent has demonstrated an inability to provide the child with a safe environment

Barry does not dispute (1) B.H. was in the Department's temporary managing conservatorship for six months or more, (2) he never visited or maintained any contact with B.H., and (3) he never demonstrated an ability to provide B.H. with a safe environment. Rather, he argues the Department did not make reasonable efforts to return B.H. to him because there was no evidence he was ever served with the family service plan.

In evaluating the Department's efforts under subsection (i), "the question is whether the Department made reasonable efforts, not ideal efforts." *In re N.A.V.*, No. 04-19-00646-CV, 2020 WL 1250830, at *7 (Tex. App.—San Antonio Mar. 17, 2020, pet. denied) (mem. op.) (quoting *In re F.E.N.*, 542 S.W.3d 752, 767 (Tex. App.—Houston [14th Dist.] 2018, pet. denied)). Preparing and implementing a family service plan is considered a reasonable effort by the Department "to return a child to its parent if the parent has been given a reasonable opportunity to comply with the terms of the plan." *In re J.I.P.*, No. 04-20-00549-CV, 2021 WL 1269913, at *3 (Tex. App.—San Antonio Apr. 7, 2021, no pet.) (mem. op.) (citing cases).

Turning to the evidence, Janelle Flechas—a CPS caseworker—testified she was assigned to the case in August 2021—one month after removal. She testified Barry was contacted by the Department before she was assigned to the case, but she could not testify as to what was discussed. However, once she was assigned, she made numerous attempts to reach Barry by phone and email but was unsuccessful. She also mailed the service plan to Barry, but it was returned to sender as undeliverable. She testified she was finally able to speak with Barry over the phone and in person during an unannounced visit on April 29, 2022. During the visit, Barry did not ask about B.H. and

later acknowledged the child after Flechas showed him a picture. Flechas testified she discussed the service plan with Barry during the visit and explained he was obligated to complete an outreach, screening assessment, and referral for substance use; individual counseling; a psychological evaluation; and parenting classes. She testified she did not bring a copy of the service plan with her during her unannounced visit. However, she mailed the service plan to Barry to the address where she arrived for this visit, and it was ultimately returned to sender.[3] Finally, she testified Barry never performed any services, never visited B.H., never attended a hearing in the case, and never provided B.H. with any economic support.

Barry testified he was served in person with the Department's petition in July 2021 at the residence where he has resided throughout the case. He testified someone at the Department then called him to set up his service plan, parenting classes, and a "long list" of other services. Shortly after the call, he changed his phone number without telling the Department. Barry testified, during their April 2022 meeting, he and Flechas discussed the lengthy paperwork and classes he had to complete. He further testified Flechas did not instruct him how to set up services. He conceded, however, he was "pretty sure" he received the service plan, stating he kept Department paperwork in a yellow folder and discussed the plan's "basic guidelines" with B.H.'s mother and the Department for forty-five minutes. He also testified he never contacted the Department to ask about B.H., never called the telephone number listed on the back of the paperwork, never provided B.H. any financial support, and never communicated with B.H. He further explained any mail sent by Flechas may have been returned to sender because he used a post-office box address for his mail, not his physical address, and he did not remember receiving the service plan via mail. Barry

---

[3] Barry's service plan was admitted without objection as Exhibit 5.

also testified he was arrested on approximately May 25, 2022 for unspecified misdemeanors, had been incarcerated since then, and believed he would be released in a little over a week.

Considering the evidence in the light most favorable to the trial court's termination order, we conclude a reasonable factfinder could have formed a firm belief or conviction termination of Barry's parental rights was valid under subsection (N) of section 161.001(b)(1) because the Department made a reasonable effort to assist Barry in complying with the plan, and Barry's failure to do so was a result of his own unwillingness to perform the services to keep his parental rights to B.H. *See J.F.C.*, 96 S.W.3d at 266; *see, e.g.*, *J.I.P.*, 2021 WL 1269913, at *3 (concluding reasonable factfinder could form firm conviction or belief appellant's refusal to maintain contact with Department and refusal to perform service plan constituted unwillingness to complete plan as well as rejection of services offered in plan); *In re J.S.*, No. 02-19-00231-CV, 2019 WL 5655254, at *5 (Tex. App.—Fort Worth Oct. 31, 2019, pet. denied) (mem. op.) (upholding trial court's finding of reasonable efforts where Department created service plan for mother and attempted to locate her but could not, and when she finally made contact and set up meeting mother was a no-show); *In re Y.W.*, No. 04-17-00445-CV, 2017 WL 4801673, at *3 (Tex. App.—San Antonio Oct. 25, 2017, pet. denied) (mem. op.) (concluding reasonable factfinder could have formed firm belief or conviction Department made reasonable efforts despite not having contact with parent after sixty-day hearing because caseworker mailed plan to parent, parent understood plan and was told failure to comply meant termination, and reasonable factfinder could infer based on parent's failure to contact Department parent not interested in parenting child). Further, in view of the entire record, we conclude the disputed evidence is not so significant as to prevent the trial court from forming a firm belief or conviction termination of Barry's parental rights was valid under subsection (N) of section 161.001(b)(1). *See J.F.C.*, 96 S.W.3d at 266.

Accordingly, we hold the evidence is legally and factually sufficient to support the trial court's finding termination of Barry's parental rights is warranted under subsection (N) of section 161.001(b)(1). *See, e.g., J.I.P.*, 2021 WL 1269913, at *3; *N.A.V.*, 2020 WL 1250830, at *7 (concluding court could have formed a firm belief or conviction reasonable efforts made, even though new service plan not provided, where caseworker tried unsuccessfully to meet mother multiple times to determine what services needed); *In re G.T.*, No. 02-17-00279-CV, 2017 WL 6759036, at *4 (Tex. App.—Fort Worth Dec. 28, 2017, no pet.) (mem. op.) (holding evidence showed reasonable fact finder could form firm conviction or belief mother did not understand service plan and did not have access to services because she ran away—not because Department failed to explain service plan or provide access to services); *In re D.A.*, No. 02-09-00460-CV, 2010 WL 3618718, at *4 (Tex. App.—Fort Worth Sept. 16, 2010, no pet.) (mem. op.) (concluding Department made all reasonable efforts where Department contacted father, made diligent search to locate father, attempted to serve him at two different addresses, but did not know how to reach father, and father did not take any action to visit or get custody of child, and disconnected his phone).[4]

Because legally and factually sufficient evidence supports the trial court's constructive abandonment finding, and a finding of only one ground for termination is necessary to support termination, we need not consider whether the evidence would support termination on subsections (C) and (O) grounds. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *see also* TEX. R. APP. P. 47.1.

---

[4] Barry also argues the Department did not make reasonable efforts because it did not consider placing B.H. with B.H.'s grandfather who lives in Oklahoma (but has property in Texas) instead of with fictive kin already fostering B.H.'s biological brother unrelated to Barry. Because we have already concluded the Department made reasonable efforts to return B.H. to Barry, we need not address this argument. *See* TEX. R. APP. P. 47.1.

## CONCLUSION

We affirm the trial court's order.

Luz Elena D. Chapa, Justice